This is Appeal 24-1331, Michael Mogan v. Portfolio Media Inc. And we'll begin with argument from the appellant. Mr. Mogan, you'll go first. Thank you and good morning, judges. Good morning. May it please the court. In my brief, I tried to follow chronologically. I'm going to go a little out of order, at least to the defamation. But first of all, appellees literally filed a motion to dismiss in response to a motion for leave to amend the complaint. In the Seventh Circuit all the time, you issue published opinions and unpublished opinions. So what is now stopping a defendant in a defamation claim citing the district court opinion on this precedent, which it can be, and to do the same thing? And from the briefing, this wasn't a simple defamation claim. So as for the motion to dismiss, I honestly ask you just to summarily dismiss it. I wasn't afforded any type of discovery and what have you. I was surprised by that. I did try to fit a response in the district court. We did have an oral argument. But upon reading the order, it was completely ‑‑ I don't remember appellees citing any precedent where that's ever been done again. Moving on to the question whether Illinois law applies, I think the issue has been fairly well briefed. I live here. I practice law here. I was injured here. I did practice in California at the time, the defendants in New York. But clearly, if you're looking at the three states, most significant relationship is here. The place of injury is here. Again, I live here. And even ignoring the what's going to control libel law, that's a different issue. Now I'd like to essentially discuss ‑‑ there was two articles, one that was republished. I attended a hearing remotely in Los Angeles from essentially the plaintiff, an attorney, and an ADA Title II claim. Can you tell that from the article? No. I gave you a copy of the complaint. The face of the complaint says Title II. It says Section 1983. And there's a California Civil Unruh Act that's very near Title II ADA claims. And it's really one of the worst ones you'll ever see. I've included in the reply brief in detail, but it involves them accusing me of not being, you know, it's hard to talk about not being disabled, lying about it, denial of reasonable accommodations, stating that because there's no cure for it, essentially I don't deserve a reasonable accommodation. They also disclosed my medical records without my consent. And so you go through this May 8th article, and it says, this lawsuit stems from a lawsuit filed in the San Francisco court, which is the Civil RICO claim. Can you tell that from the article? No. I mean, it should be common knowledge, the complexity of the Civil RICO claim. It then goes on to say, it references a September 2019 San Francisco interlocutor order where a judge made statements. I don't want to misstate the allegations, but that I condemned my misconduct by accusing the opposing counsel of committing fraud on the court, which a judge found baseless and unprofessional. The California Appellate Court already reviewed that. And they did mislead the court and it was fraud on the court, so it wasn't unprofessional. This May 8th, 2023 article, it wasn't written as September 2019. It was essentially written in May 2023. So how is that a fair abridgment of the proceedings? It, again, casts me as being unprofessional, and that's kind of the basis of what defamation is. And there's another allegation saying that I tried to take advantage of a clerical error by the American Arbitration Association to avoid a court-ordered arbitrated dispute. And so, again, there was no clerical error. The opposing counsel misled the judge. And so that's clearly defamation. There's no – I think let me just explain what happened here. If it was a fair abridgment of the official proceedings, you should be able to tell, at least in summary form. And so with Law 360, contrary to the name Law 360, if they see the word sanction, fine, attorney fees, Airbnb, that's all they're really concerned with. And essentially, I'm tagging another article. Instead of – I understand that blogs tell the person on the protections, but they also have to act like reporters and not defame people such as myself. The other article essentially makes reference to a proceeding in San Francisco court. This is a little – I think in America you could tell this, but again, it was a Silver Eagle case. You can see it was dismissed. And if you read that article, you can't really tell what the gist of the complaint was. I did include a complaint in the record, but essentially I had sued Airbnb for serving me a sanctions motion that they actually never filed. They even asked the court to impose the fees on me. Also, a demand letter, which is sent for no other reason than to intimidate me from seeking relief in a court, which is a civil matter. And multiple acts of wire fraud and mail fraud, et cetera. And again, you have Law 360 more concerned with tagging the word Airbnb sanctions. It's unfortunate that whether it's a small solo practitioner, lawyer, or Airbnb, you're essentially being treated differently. And just going to allegations for the defamation, the appellee is required to prove that it's a fair arrangement of official proceedings. They can't omit facts. It says I tried to accuse Airbnb of fraud, harassment, and extortion after the company successfully moved its sanctions against me, pretending to reopen my client's case after it was dealt with in arbitration. I don't want to misspeak. Airbnb wasn't a party to any proceedings in the San Francisco State Court. So again, you've got them tagging Airbnb in an article, putting Airbnb in an article, because it's a multi-billion dollar company at the expense of my reputation. There's another allegation saying one of my client's cases went to arbitration. Airbnb paid its arbitration fee, which again wasn't a party. So that's false. And the transaction was not recorded, which I've already addressed. I allege that the same was false that I filed a cause of action that claimed that I tried to have sanctions lifted. That casts doubt on me as if I'm essentially an incompetent attorney. There's no one to record I tried to get anything lifted. There's actually a Chapter 11 proceeding in this building, actually, that stemmed from everything in here. And so with that, I'd just like to close. And again, I wasn't afforded any type of discovery. This isn't a single, like, one allegation of defamation. Perhaps if the district court had just considered their motion to dismiss, you know, within the same proceeding, and the court can't see spontaneous dismiss actions, which they do sometimes. But it just was, you know, inappropriate here, and I'd like to reserve the rest of the time for rebuttal. Thank you. Thank you, Mr. Mogan. We'll now move Ms. McNamara to you. May it please the court. Elizabeth McNamara on behalf of the Appellee Portfolio Media, Inc. Appellant, as you heard this morning, makes the same error before this court that he made below, which is that he fails to explain how or even whether portfolio media misrepresented the official proceedings that are the subject of the articles. The record establishes that each of the articles in each of the 13 challenge statements were either direct quotes from the judicial opinions or fair characterizations of them. And as such, they are squarely protected by the fair report privilege. The court reached back and considered the first article in January of 22, as well as the two subsequent articles, and considered carefully each of the 13 statements. It's important to give a little context as to what these decisions were dealing with. The first article, and I very briefly will just note, was an award of sanctions against the appellant as a result of a frivolous motion to lift an arbitration stay and conduct that the court found to be baseless and unprofessional. The next was a federal court ruling that appellant's subsequent action for abusive process and racketeering and the like was also frivolous, and that it was commenced for an improper purpose, thereby later awarding over $162,000 in attorney's fees. It bears noting, while it wasn't a subject of one of the Law 360 articles preceding this federal court action, the appellant also sued the state court judge as well as the appellate court judge for constitutional violations. That, too, was dismissed. And finally, the third article reported on a hearing on an action appellate commenced against the state bar of California days after it filed a notice of disciplinary charges because the appellant had failed to pay the sanctions in the state court action. Each of these Law 360 articles were straightforward reports of these judicial proceedings. An appellant never identifies how Law 360 got anything wrong or critically wrong in a material sense that would be defamatory to him. At most, as you heard this morning, he tries to argue that the findings or facts in the rulings were somehow in error. But this misconstrues a foundational principle of the fair report privilege. It protects the substantial accuracy of the summary of the judicial proceedings. That is the benchmark by which it is judged, not whether the government got it right, whether the decision was right, whether the facts were ultimately true or false. It's whether it was an accurate summary. And there's no dispute in this record and the clear, just straightforward comparison of the articles with the rulings that these were accurate summaries of the rulings. Indeed, you heard again this morning, he contends that the appellate court in California got it wrong because he had proven to that court that the opposing parties intentionally misled the state court about the record. But as the court below found, and as the judicial proceedings clearly established, the California Court of Appeals affirmed that ruling and found no reason to reverse the order, finding that plaintiff's motion was factually and legally frivolous. In short, the appellate does not identify any material error in Law 360's reportings on the judicial proceedings at issue and only continues to attack the underlying merits. For all these reasons, Your Honor, we ask that the court affirm the judgment below, the decision below on this record, as well as everything else before the court. I'm happy to address any questions. Thank you, Ms. McNamara. Thank you, Judge. Mr. Mogan, we'll go back to you now for rebuttal. Okay, thank you, Judge. If you'll just notice what just happened here, I went line by line telling you what was alleged and what was false, and that didn't occur because there's no defense. I heard that I was sanctioned in federal court for $160,000. The magistrate judge overruled a longstanding precedent saying that the litigation privilege bars RICO claims. The opposing counsel misled the court, went up the chain. They abandoned that, and then they said issue a conclusion without doing what you're just doing here today, giving oral arguments. So, again, you've got Arab-Mexican lawyers committing fraud in the court. She next says, I sued. I don't want to misspeak here. She said, I sued the two judges. So when you have a 1983 claim, you essentially name the judges as defendants, and you're really suing the state of California. So there's a law in California, 1281.98 of the California Civil Procedure, that says you don't pay your arbitration fees on time. You go back to the state court, and essentially you can get a fault, attorney fees and everything. I proved that they were late. It was in the process of being passed and acted. The appellate court wouldn't follow that. It wasn't frivolous. Essentially, they said the payment is late. So 1983 allows you to file a declaratory relief complaint, not for any type of damages. And so opposing counsel is even highlighting the falsity. And can you tell that from the article? No. She next says the California Bar filed charges. That happened in February 2023. I'm glad to say it forcibly made them drop it. The conduct's got a lot worse, actually. But during a Chapter 11 proceeding for a debt payable to a third party, which can be held in contempt of court, in April of 2024, 9th Circuit said that's sanctionable conduct. So the California Bar trying to sanction me, which can be held in contempt of court, and as soon as I'm done with the motion, I'll raise it, completely irrelevant here. But, again, it just shows to highlight the falsity in the false statements that are published in the articles. With that, thank you. Thank you, judges. Thank you, counsel. The case will be taken under advisement. And that will complete our hearings for the morning.